**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **B.R., T.R.-1, and T.R.-2.**

**No. 18-0520** (Wood County 17-JA-191, 17-JA-192 and 17-JA-193)

**MEMORANDUM DECISION**

Petitioner Mother T.R.-3, by counsel Jessica E. Myers, appeals the Circuit Court of Wood County's May 1, 2018, order terminating her parental rights to B.R., T.R.-1, and T.R.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Katrina M. Christ, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future and by terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 26, 2017, the DHHR filed an abuse and neglect petition alleging that petitioner and her live-in boyfriend engaged in domestic violence in front of the children and that the boyfriend physically abused the oldest child. On July 20, 2017, petitioner was arrested and charged with domestic battery and child abuse against the oldest child. The child's injuries were discovered following visitation with his father and aunt who took him to the hospital for abrasions and bruising. Upon investigation by the DHHR, petitioner admitted that she caused the bruising to the child by striking him with a spoon and a belt. When a DHHR worker went to petitioner's home, the worker observed that petitioner had been severely beaten. Petitioner claimed that she was beaten by a neighbor but could not provide details of the altercation. Petitioner's boyfriend's hand was cut and swollen, but he blamed his injuries on an ATV

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children and petitioner share the same initials, they will be referred to as T.R.-1, T.R.-2, and T.R.-3, respectively, throughout this memorandum decision.

accident. During a forensic interview, the oldest child disclosed that petitioner hit him and his younger brother with a hanger and that petitioner's boyfriend hit them with a belt. The oldest child further reported that petitioner's boyfriend "beats mommy" and "puts holes in the wall." The DHHR also discovered that the children's father had an outstanding capias warrant related to charges of domestic battery and domestic assault. Those charges stemmed from a February of 2017 incident wherein the father hit petitioner in the face, poured rubbing alcohol on her, and threatened to set her on fire. The children witnessed the incident.

On September 26, 2017, the circuit court held an adjudicatory hearing and petitioner stipulated to physically abusing the oldest child and engaging in domestic violence in front of the children. Petitioner was adjudicated as an abusing parent and filed a motion for a post-adjudicatory improvement period, which was later granted in January of 2018. On March 5, 2018, the DHHR filed a report indicating that petitioner failed to participate in any services, appear for drug screens, or visit with the children. Following petitioner's failure to appear for a March 9, 2018, review hearing,[2] the DHHR moved the circuit court to set the case for disposition. On April 13, 2018, the DHHR filed an additional report indicating that petitioner failed to keep in contact with the DHHR, had not requested visits with the children or inquired about their wellbeing, and had not participated in any services since her post-adjudicatory improvement period began.

On April 27, 2018, the circuit court held a dispositional hearing. Petitioner admitted that she needed mental health treatment for depression and that she enrolled in counseling services prior to the dispositional hearing, but failed to attend. She acknowledged that she enrolled in domestic violence group therapy, but failed to attend. She also admitted that she had not submitted to drug screens since August of 2017, had a long history of methamphetamine use, and used methamphetamine two weeks prior to the dispositional hearing. However, she denied the need for substance abuse treatment. At the conclusion of the dispositional hearing, the circuit court found that petitioner failed to participate in the services provided by the DHHR and noted her failure to inquire about the children or request visits with them. The circuit court noted the children's young ages and their need for permanency. The circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was in the children's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its May 1, 2018, dispositional order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a

[2]Petitioner was represented by counsel at this hearing.

[3]The children's father's parental rights were also terminated. According to respondents, the permanency plan for the children is adoption in their current foster placement.

2

reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T*., 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in finding there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future and by terminating her parental rights. In support, petitioner contends that the evidence did not support the circuit court's finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future. Further, she asserts that "there is certainly a chance that the services could be offered and . . . petitioner could correct any deficiencies." We find this argument to be meritless.

West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation where there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

Here, petitioner failed to participate in services provided by the DHHR. She stopped attending drug screens in August of 2017 and did not visit the children or inquire about their wellbeing. She also failed to keep in contact with the DHHR during the proceedings. While she argues that she took "the initial steps" to secure mental health treatment for depression and domestic violence counseling, petitioner admitted at the dispositional hearing that she did not attend any sessions. Further, although petitioner admitted at the dispositional hearing that she had a history of abusing methamphetamine, including using the substance two weeks prior to the hearing, she denied that she needed substance abuse treatment. Petitioner's lack of participation in services and failure to acknowledge the abuse and neglect issues demonstrate that the circuit court was correct in finding there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future.

Further, West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for

the children's welfare. Due to petitioner's failure to participate in services and obtain treatment to address her substance abuse and domestic violence issues, it is clear that termination of her parental rights was in the children's best interests. Therefore, we find no error in the termination of petitioner's parental rights.

Further, petitioner argues that the circuit court erred in terminating her parental rights instead of utilizing a less-restrictive dispositional alternative. In support, she asserts that the children had been in the same placement throughout the proceedings and allowing her additional time for improvement would not have been disruptive to the children's lives. We disagree. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). During the dispositional hearing, the circuit court specifically noted the children's young ages and their need for permanency. Allowing petitioner additional time for improvement would only delay permanency for the children. Further, we have held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. For these reasons, the termination of petitioner's parental rights was appropriate.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 1, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018

4

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment